**Linda ROBB–FULTON, Appellant,**

v.

**David ROBB, Sr., Appellee.**

**In re David ROBB, Sr.**

**Civ. A. No. MJG–93–505.**

United States District Court,
D. Maryland.

July 6, 1993.

576

Anthony Andrew Keder, Hyattsville, MD, for appellant.

Richard M. McGill, Upper Marlboro, MD, for appellee.

GARBIS, District Judge.

The Court has before it Linda Robb–Fulton's Appeal from the United States Bankruptcy Court for the District of Maryland and David Robb, Sr.'s Opposition thereto. The Court finds a hearing unnecessary.

*PROCEDURAL BACKGROUND*

On March 15, 1991, David Robb, Sr. ("Appellee") filed a voluntary petition for bankruptcy protection under Chapter 11 in the United States Bankruptcy Court for the District of Maryland. The petition was subsequently converted to a Chapter 7 petition. On February 13, 1992, Linda Robb–Fulton ("Appellant") filed a complaint objecting to dischargeability, alleging that Appellee's agreement to pay alimony was non-dischargeable. The matter was tried before Bankruptcy Judge Paul Mannes. By final order issued January 3, 1993, Judge Mannes

ruled that the debt in question was dischargeable because the payments in question were intended as support for a non-adopted stepchild and not as alimony for Appellant.[1]

*FACTUAL BACKGROUND*

The parties were married to each other on November 10, 1974 and had no children together. Appellant, a high school graduate with two children from a prior marriage,[2] continued her education during the marriage and ultimately became a physician's assistant. Appellant states she was working part-time and earned approximately $10,000 per year. Appellee was a physician earning between $100,000 to $125,000 annually.

The parties separated in 1980 and signed a Separation Agreement. The parties reconciled in November of 1981, but this reconciliation did not last and the parties separated again in 1983. On August 24, 1983, the parties entered into an agreement entitled "Addendum to Separation and Property Settlement Agreement" (hereinafter "Addendum"). The parties agreed that, except as modified or amended by the second agreement, the original 1980 separation agreement would be regarded as valid and binding.

The Addendum provides, in part, that Appellee "does hereby agree to pay alimony (temporary and permanent) for support and maintenance of the Wife [Appellant] until such time as the Wife should die, or until the Husband [Appellee] dies, in accordance with the payment terms specified herein. . . . Said alimony shall be paid . . . in the amount of three thousand dollars ($3,000.00) per month." Addendum, at 6. The addendum further provides in separately captioned sections that Appellee shall "pay temporary support for David Maphis until he has completed boarding school . . . or until he discontinues said schooling" and that Appellee shall pay for the housekeeper then working for Appellant, but if the housekeeper should cease working, then the Appellee would pay to Appellant an additional $400 per month as

---

1. Contrary to Appellant's argument, there is no indication that the Bankruptcy Court concluded as a matter of law that the Addendum was without consideration. Nor was such a conclusion the basis for the Bankruptcy Court's order. Thus, the Court does not address this issue.

2. Appellee never adopted Appellant's children from a previous marriage, David and Dianna Maphis. Dianna suffered severe brain injury as a child and requires constant care. A tort claim has led to a fund of $150,000 being established for Diana's benefit.

"temporary support until such time as Dianna Maphis is in a residential situation elsewhere." Addendum, at 7. The Addendum was incorporated but not merged into the Final Judgment of Absolute Divorce.

Appellee testified at trial that he intended the $3,000 per month payments as support for Appellant's daughter and not as alimony. Appellee stated that he arrived at the $3,000 per month figure by taking the cost of placing Dianna Maphis in an institution (estimated by him at $2,500 per month) and taking into account the tax effects of the payment as income to Appellant and a deduction to Appellee. Appellant testified that she needed support at the time of the separation and was aware of the disparity in her income and the income of Appellee. She further testified that the bankruptcy hearing was the first time she learned of Appellee's alleged intent that the payments be for the support of Dianna Maphis.

Appellee made payments to Appellant for approximately three years. After experiencing financial problems, Appellee ceased making the payments and informed Appellant he could no longer afford the payments. Subsequently, Appellee filed for bankruptcy protection.

## DISCUSSION

■ Under 11 U.S.C. § 523(a)(5) (1993) an individual debtor may not be discharged from a debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . ." Thus, if the payments of $3,000 per month were in fact alimony payments the debt is not dischargeable. If the payments were for the support of Dianna Maphis, who is not a child of the debtor, even if labelled as "alimony" by the parties, the debt would be dischargeable. At issue, then, is whether the bankruptcy court was clearly erroneous when it concluded that the payments were for support of Dianna Maphis (not alimony) and, therefore, dischargeable in bankruptcy.

■ The parties' written agreement expressly states that the payment of $3,000 per month is alimony for the support and maintenance of Appellant and both parties treated the payments as such. Indeed, Appellee filed income tax returns, signed under penalties of perjury, claiming the payments to be deductible alimony rather than nondeductible child support. Further, when Appellee ceased to make payments, contempt enforcement proceedings were brought against him for failure to pay alimony. Appellee testified that he intended the payments as support for Dianna, but Appellant testified to the contrary. The trial Judge appears to have believed Appellee. This case cannot, however, turn on a question of credibility as to Appellee's subjective intent. The evidence in this case establishes beyond reasonable doubt that the payments were in fact alimony.

Every objective indicator reflects that the payments were alimony and not child support. These include:

1. The fact that the payment was not related to the needs of Dianna Maphis—it continued in full whether or not Dianna had any needs or even if she died.

2. The payment was tied to the life of Appellant and ceased on the death of Appellant even if Dianna continued to live and have financial needs.

3. The parties in fact made specific provisions for non-alimony support payments. Thus, the Addendum specifically provides that Appellee shall pay for David's schooling and that Appellee shall pay for the housekeeper caring for Dianna Maphis. If said housekeeper ceases working for Appellant, then Appellee must pay Appellant an additional monthly amount.[3]

---

3. The fact that Appellee agreed to pay for the housekeeper tending to Dianna Maphis is further

The Court has no doubt that, even if Judge Mannes believed Appellee's statement of his subjective intent, the decision that the payments were in fact alimony was clearly erroneous.

This Court cannot conclude this decision without observing its concern about the position taken here by the Appellee. The contention that the payments were not actually alimony is contrary to the objective evidence including the operative document in issue. However, of even more concern is the fact that if Appellee was correct, then he filed income tax returns falsely claiming alimony deductions for the payments in question.

*CONCLUSION*

For the foregoing reasons: (1) the decision of the Bankruptcy Court that the debt due Debtor Linda Robb–Fulton is dischargeable in the final Order issued January 3, 1993 is **REVERSED;** (2) the debt due Debtor Linda Robb–Fulton is nondischargeable; and (3) this case shall be **REMANDED** by separate Order.

evidence that there was neither an oral nor a written agreement regarding institutional care

for Dianna.